IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POMPARE TECHNOLOGIES, LLC and<br>B. BRAUN MEDICAL, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>HOSPIRA, INC.,<br><br>    Defendant.<br><br>B. BRAUN MEDICAL, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CAREFUSION 303, INC.,<br><br>    Defendant,<br><br>and<br><br>HOSPIRA, INC.,<br><br>    Intervenor and<br>    Third-Party Plaintiff,<br><br>and<br><br>CARLOS DE LA HUERGA and<br>CARTANOVA, INC.<br><br>    Third-Party Defendants. | No. 11-cv-4246<br>No. 11-cv-6007<br>CONSOLIDATED CASES<br><br>Judge John Z. Lee<br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Plaintiff B. Braun Medical, Inc. ("Plaintiff" or "Braun") brings the instant motion for summary judgment against Defendant Hospira, Inc. ("Defendant" or "Hospira"), asserting that Hospira's claim for correction of inventorship brought pursuant to 35 U.S.C. § 256 is barred by the equitable doctrines of laches and estoppel. [Doc. 43.] For the reasons set forth below, Plaintiff's Motion is denied.

## Procedural History

This case has had a particularly thorny procedural history, even for a patent case.[1] Plaintiff B. Braun Medical, Inc., the current owner[2] of United States Patent No. 7,933,780 (the "'780 patent") brought this suit (No. 11-cv-4246) against Hospira, Inc., a spin-off of Abbott Laboratories, seeking damages for infringement, injunctive relief, and a declaratory judgment that Hospira does not own the '780 patent. Hospira counters that it has ownership rights in the '780 patent, and also asserts third-party claims against Carlos de la Huerga, the named inventor of the '780 patent. Meanwhile, Braun filed a second suit against a different defendant, CareFusion 303, Inc. (No. 11-cv-6007), asserting infringement claims arising out of several other patents, along with the '780 patent. Hospira intervened in that action as well, seeking to correct inventorship of the '780 patent pursuant to 35 U.S.C. § 256. Braun then filed counterclaims against Hospira relating to the '780 patent and two other patents at issue between Braun and CareFusion, U.S. Pat. No. 6,790,198 (the "'198 patent") and U.S. Patent No. 7,645,258 (the "'258

---

[1] For the purposes of this Order, this Court will confine its recitation of the procedural history and facts underlying this case to only those directly relevant to Plaintiff's motion for summary judgment.

[2] Braun purchased the '780 patent from named plaintiff Pompare Technologies, LLC (Pl.'s LR 56.1(a)(3) ¶ 11) and is the entity prosecuting the claims in this case.

2

patent"). After the two actions were consolidated before this Court under case No. 11-cv-4246, Braun and CareFusion settled all claims between them. Thus, only the claims pending between Braun and Hospira relating to the '780 patent, the '198 patent, and the '258 patent remain at issue in this case.

### Undisputed Material Facts

Braun seeks summary judgment on Hospira's claim for correction of inventorship, asserting that it is barred by the doctrines of laches and/or equitable estoppel. In support of its motion, Braun sets forth the following undisputed material facts that it contends entitle it to summary judgment.

Carlos de la Huerga is the sole named inventor of U.S. Patent No. 7,933,780. (Pl.'s LR 56.1(a)(3) Stmt. ("Pl.'s LR 56.1(a)(3)") ¶ 4.) De la Huerga was formerly the President and sole director of an entity called CartaNova, Inc., which was dissolved in 2004.[3] (*Id.* ¶ 5.) On November 22, 2001, de la Huerga presented certain intellectual property to an individual named Patrick Keely at Abbott Laboratories, the predecessor of Hospira. (*Id.* ¶ 6.) It is disputed whether this material contained the actual patent application for the '780 patent. (Compare *Id.* ¶ 6 with Def.'s LR 56.1(b)(3)(A) Stmt. ("Def.'s LR 56.1(b)(3)(A)") ¶ 6.) Braun alleges that these materials described the intellectual property described in the patent application entitled "Method and Apparatus for Controlling an Infusion Pump or the Like," which was filed with the U.S. Patent and Trademark Office on December 2, 2001, and published on March 28, 2002. (Pl.'s LR 56.1(a)(3) ¶ 7.) Braun further alleges that de la Huerga received a letter from Keely dated March 6, 2002, stating that Abbott did not wish to license the intellectual property

---

[3] For the purposes of this motion, this Court refers to de la Huerga and Carta Nova interchangeably.

3

and that Abbott was "concerned that the material you have provided a copy of attempts to claim overly broad coverage for ideas and concepts that are in the public domain as well as those developed by Abbott...." (*Id.* ¶ 8.) De la Huerga responded by letter on March 13, 2002, requesting more information about Abbott's objections. (*Id.* ¶ 9.) Braun contends that neither Keely nor anyone else from Abbott/Hospira ever responded to de la Huerga's letter. (*Id.*)

In opposition to Braun's motion, Hospira submitted a Local Rule 56.1(b)(3)(C)[4] statement of additional facts. This Court takes Hospira's statement of additional facts as true for the purposes of deciding this motion because Braun has not filed a pleading disputing them. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). In it, Hospira contends that in addition to the contacts that took place between de la Huerga and Keely in 2001, de la Huerga again approached Hospira in 2007 to discuss selling or licensing to Hospira "the application that led to the '780 patent." (Def.'s LR 56.1(b)(3)(C) Stmt. ("Def.'s LR 56.1(b)(3)(C)") ¶ 5.) Hospira also contends that Paul Rolfes of Hospira spoke with de la Huerga in 2007, at which time he "repeated the same concerns raised in Pat Keely's March 2002 letter about inventorship and over-breadth of claims." (*Id.* ¶ 6.) Moreover, after de la Huerga's attempt to sell or license the patent to Hospira, he attempted to sell it to other entities, including Pompare and Baxter. (*Id.* ¶¶ 7, 18, 19.) At that time, de la Huerga informed his contacts at both Pompare and Baxter of Hospira's stated concerns regarding inventorship. (*Id.*)

---

[4] Hospira filed its statement of additional facts in support of its opposition to Braun's motion pursuant to Local Rule 56(b)(3)(B). The proper citation to the applicable rule is actually Local Rule 56.1(b)(3)(C), and the Court will refer to it accordingly.

The '780 patent issued on April 26, 2011. (*Id.* ¶ 3.) Braun filed suit against Hospira for infringement of the '780 patent on June 22, 2011. (*Id.* ¶ 13.) Hospira filed its § 256 correction of inventorship claim, by way of an intervenor complaint, on September 2, 2011. (*Id.* ¶ 1.)

**Analysis**

Hospira presents a claim for correction of inventorship pursuant to 35 U.S.C. § 256, which provides, in relevant part, that when "through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part," the omitted inventor may seek to correct the error. Braun's motion for summary judgment argues that Hospira's correction of inventorship claim comes too late, causing prejudice to Braun, and is therefore barred by the equitable doctrines of laches and estoppel. This Court addresses the two issues raised by Braun in turn.

**Laches**

In order for Braun to prevail on its laches argument, Braun must prove that: (1) Hospira's delay in asserting its correction of inventorship claim was unreasonable and/or inexcusable; and (2) Braun has been prejudiced by Hospira's delay. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (*en banc*). It is largely undisputed that, in the patent context, a delay of six years before filing suit for correction of inventorship is sufficient to establish laches. *Id.* Thus, the key question this Court must resolve in making the unreasonableness determination is when the laches period begins to run.

At the time that this motion was briefed, the seminal case from the Federal Circuit discussing the application of the laches doctrine to inventorship actions was *Advanced*

5

*Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993). Notably, however, *Advanced Cardio* did not definitively answer the precise question before this Court: does the laches period for the purposes of a § 256 correction of inventorship claim begin to run prior to the issuance of the actual patent when the complaining party knew or should have known that an application was filed without crediting it as an inventor?

In the intervening years, conflicting decisions emerged from various courts faced with this issue. Some courts adhered to the plain language of § 256, which refers to "issued patent[s]," and held that because correction of inventorship cases may be brought only after a patent is issued, the laches period begins to run at that time. Other courts held that in certain circumstances the laches period could begin running earlier, prior to the patent's issuance. *Compare, e.g., Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008) (laches period begins to run when plaintiff aware of "issuance" of patents) and *Studio & Partners, S.R.L. v. KI*, No. 06-C-628, 2007 U.S. Dist. LEXIS 85023, at *17 n. 7 (E.D. Wis. Nov. 7, 2007) (no basis for laches defense where correction of inventorship claim did not "accrue" until after patents issued) with *Moore v. Broadcom, Inc.*, No. C06-05647, 2008 WL 425932, at *5 (N.D. Cal. Feb. 14, 2008) (citing more than eight-year delay after notice of patent application) and *Frugoli v. Fougnies*, No. 02-957-PHX RCB, 2004 U.S. Dist. LEXIS 28141, at *10 (D. Ariz. Aug. 25, 2004) (seven-year delay after notice of patent application).

Braun, seizing upon this second line of cases and, in particular, an opinion from the Southern District of Texas in the case of *Hor v. Chu*, 765 F. Supp. 2d 903, 916 (S.D. Tex. 2011), argues that the laches period began to run in 2002 when Hospira was given

notice of de la Huerga's intent to file a patent application that did not name Hospira as a co-inventor, regardless of when the patent actually issued. Hospira counters that a correction of inventorship action pursuant to § 256 may only be brought once the patent has actually issued based upon the express language in § 256.

On November 14, 2012, the Federal Circuit decided the appeal in *Hor v. Chu*, overturning the district court opinion relied upon by Braun and definitively resolving this core question. 699 F.3d 1331 (Fed. Cir. 2012). The Federal Circuit expressly ruled that the laches period for § 256 correction of inventorship claims begins to run at the time the patent issues and not before, even "when the omitted inventors knew or should have known prior to patent issuance that their names were omitted from the patent application[.]" *Id.* at 1355. As "this Court is bound to follow the teaching of the Federal Circuit in this action under the patent laws," *Zojo Solutions, Inc. v. Stanley Works*, 712 F. Supp. 2d 756, 757 (N.D. Ill. 2010), the Court finds that the laches period for Hospira's § 256 correction of inventorship claim began to run on April 26, 2011, when the patent issued and not before. Because Hospira filed its correction of inventorship claim a mere five months after the '780 patent issued, Braun's laches argument must fail.[5]

**Estoppel**

In order to obtain summary judgment based upon the doctrine of equitable estoppel, Braun must prove that (1) Hospira, with "knowledge of true facts, communicate[d] something in a misleading way, either by words, conduct or silence"; (2)

---

[5] This Court does not need reach the second laches element, whether Braun was materially prejudiced or harmed by Hospira's delay, given the clear dictates of *Hor*. Braun's additional arguments, raised for the first time on reply, that Hospira could have pursued the alternate remedies of seeking an interference proceeding at the USPTO or, where the application was pending, a correction of inventorship via an application to the commissioner pursuant to 35 U.S.C. § 116, were also rejected by the Federal Circuit in *Hor v. Chu*. 699 F.3d at 1335-36.

de la Huerga relied on that communication; and (3) de la Huerga/Braun "would be harmed materially" if Hospira later asserts an inconsistent claim. *Aukerman*, 960 F.2d at 1041. In support of this argument, Braun contends that Hospira kept silent regarding its objections to de la Huerga's patent application for 9 ½ years (between 2002, when Keely of Abbott sent the objection letter to de la Huerga, and 2011, when Hospira filed its inventorship claim). Braun further contends that this lengthy period of silence induced de la Huerga into relying on Hospira's inaction, causing him to move forward and sell the '780 patent to Pompare, and that Braun suffered prejudice due to its substantial financial investment in the '780 patent.

Hospira counters that the facts establish that Hospira was far from "silent" for 9 ½ years and, in fact, that it had interactions with de la Huerga as recently as 2007, at which time Hospira once again raised its concerns. (Def.'s LR 56.1(b)(3)(C) ¶¶ 5-7). Hospira further contends that de la Huerga's own actions in marketing the patent to Pompare and other prospective buyers preclude a finding that he relied to his detriment on Hospira's silence, because those communications demonstrated his awareness of Hospira's potential claim. Hospira also argues that given Braun's knowledge of Hospira's potential claim at the time it acquired the '780 patent, it cannot establish prejudice. On reply, Braun does not address Hospira's arguments regarding the communication between Hospira and de la Huerga that allegedly occurred since 2007, but counters that de la Huerga (and later, Braun) relied on Hospira's inaction because Hospira never identified the specific claims that were the subject of its objections.

Based on the numerous facts in dispute surrounding the equitable estoppel issue, summary judgment is inappropriate. If Hospira was truly silent for 9 ½ years, that might

weigh in favor of summary judgment. However, this fact is hotly disputed. As Hospira points out, Mr. de la Huerga testified at his deposition that he had a discussion with Paul Rolfes of Hospira in 2007, during which time Hospira expressed concerns over the patent application. (Def.'s LR 56.1(b)(3)(C) ¶ 6.) Furthermore, Mr. de la Huerga testified that he informed at least two potential purchasers of the patent, Pompare and Baxter, of Hospira's potential claim. (Id. ¶¶ 7, 18, 19.) Braun has not responded to these factual statements made in Hospira's Hospira's Local Rule 56.1(b)(3)(C) statement, and they are taken as true for the purposes of this motion. Thus, genuine issues of material fact constrain this Court from granting summary judgment to Braun as to its affirmative defense of equitable estoppel.[6]

### Conclusion

For the reasons set forth above, Braun's motion for summary judgment on Hospira's claim of inventorship is denied.

1/11/13

John Z. Lee

---

[6] Because genuine issues of material fact exist as to the first element of equitable estoppel, this Court needs not reach Braun's reliance and prejudice arguments.